UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONNA WITSELL and CHARLES
WITSELL,

    Plaintiffs,

v.                                                CASE NO: 8:11-cv-781-T-23AEP

SCHOOL BOARD OF HILLSBOROUGH
COUNTY, FLORIDA,

    Defendant.
_____/

**ORDER**

The plaintiffs sue (Doc. 1) under 28 U.S.C. § 1983 ("Section 1983") and state law on behalf of themselves and the estate of H.S.W. The plaintiffs allege negligence and a violation of both the plaintiffs' and H.S.W.'s right under the Fourteenth Amendment of the United States Constitution. The defendant (the "School Board") answers (Doc. 10) the negligence claim and moves to dismiss (Doc. 8) the Fourteenth Amendment claims. The plaintiffs respond (Doc. 13) in opposition.

<u>Allegations of the Complaint</u>

Donna and Charles Witsell are married and live in Hillsborough County, Florida. The Witsell's thirteen-year-old daughter, H.S.W., attended Beth Shields Middle School in the town of Ruskin. On Friday, September 11, 2009,[1] a teacher ordered H.S.W. to

---

[1] The complaint alleges that H.S.W.'s suicide occurred in 2010, but the School Board notes that, in fact, the event occurred in 2009. The plaintiffs offer no response to School Board's contention, and the "no-harm contract" (Doc. 8-1) is undated. Nonetheless, the day of H.S.W.'s suicide is a fact both "not subject to reasonable dispute" and either "(1) generally known within the territorial jurisdiction of the trial
(continued...)

report to the principal's office after the teacher noticed shallow cuts on H.S.W.'s thigh. At the time, both the teacher and the principal knew that H.S.W. "was experiencing extraordinary ridicule and harassment from other students because of a prior, juvenile indiscretion: H.[S.W.] texted a suggestive image of herself to a boy at the end of the prior school year."

Throughout the afternoon on September 11, 2009, a school social worker provided H.S.W. "involuntary mental health counseling". The counseling on September 11 was H.S.W.'s first encounter with the social worker and first experience with mental health counseling. The social worker counseled H.S.W. "in isolation" without notice to either the school's psychologist, the school's "resource officer," the principal, H.S.W.'s "scholastic counselor," or the plaintiffs. After the counseling session, the social worker failed to notify the plaintiffs of either the mental health counseling, the shallow cuts on H.S.W.'s thigh, or "the need for continued care."

The following day, Saturday September 12, 2009, H.S.W. committed suicide in her bedroom at the plaintiffs' residence. The plaintiffs discovered in H.S.W.'s bedroom a "no-harm contract" (Doc. 8-1) between the social worker and H.S.W. In the "contract," H.S.W. agreed not to "attempt suicide or die by suicide" and to call the social worker if H.S.W. again developed suicidal thoughts. In this action, the plaintiffs allege (1) that the involuntary counseling occurred as a result of both an official policy on suicide

---

$^1$(...continued)
court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)-(c) (stating that a fact is susceptible to judicial notice absent a request for judicial notice). A fact judicially noticed is susceptible to consideration in resolving a motion to dismiss. See Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002); Rounds v. Genzyme Corp., 2010 WL 5297180, *1 (M.D. Fla. 2010).

- 2 -

prevention and the School Board's widespread "customs and practices"; (2) that the School Board's policy and custom "demonstrated a deliberate indifference to the constitutional rights and interests of parents"; (3) that the School Board "had the opportunity to review the resulting acts and omissions, failed to undertake any remedial measure, and effectively ratified [the conduct] as being in accord[] with [the School Board's] policy and customs"; (4) that H.S.W. lacked the ability to "provide for her own safety and welfare in light of her severe mental state, suicidal tendencies[,] and sheer nonage"; (5) that the School Board assumed responsibility for H.S.W. and "plac[ed] her in a worse situation than if [the School Board] and [the School Board's] personnel had not acted at all"; (6) that the social worker "stood in locus parenti figuratively as well as legally"; (7) that, in entering the "no-harm contract," H.S.W. relied on the social worker for "continuing care"; and (8) that, when the social worker released H.S.W. without notice to the plaintiffs or to anyone else, the social worker (whose conduct the School Board "effectively" ratified) acted with deliberate indifference and with disregard to her affirmative duty toward H.S.W.

## Discussion

In moving to dismiss the Fourteenth Amendment claims, the School Board argues (1) that resolving the motion requires consideration of three documents mentioned by, and central to, the complaint; (2) that the plaintiffs fail to show a policy or custom sufficient to state a claim against the School Board under Monell v. Dep't of Social Serv., 436 U.S. 658 (1977); (3) that, even if the plaintiffs show a policy or custom, the plaintiffs cannot state a "plausible theory of liability" under Section 1983.  In response,

the plaintiffs assert (1) that, although the School Board's "purported policy" is susceptible to consideration in deciding the motion to dismiss, the policy has no effect on the plaintiffs' claim; (2) that the "involuntary" counseling "worsened [H.S.W.'s] circumstances" and deprived the plaintiffs of "an opportunity to render meaningful aid"; (3) that, by seizing "custody" of H.S.W. for "involuntary" mental health counseling, the School Board "accepted an affirmative duty for [H.S.W.'s] care"; and (4) that the plaintiffs adequately demonstrate a policy or custom by alleging "inadequate guidelines on suicide prevention, a lack of training, a lack of supervision, a lack of controls to assure accountability, the assignment of [H.S.W.] to an unfamiliar social worker," and the failure to effect remedial action after H.S.W.'s suicide.

"[A] municipality can be found liable under [Section] 1983 only [if] the municipality itself causes the constitutional violation at issue. Respondeat Superior or vicarious liability will not attach under [Section] 1983." City of Canton v. Harris, 489 U.S. 378, 385 (1989) (emphasis in original); Greer v. Hillsborough County Sheriff's Office, 2006 WL 2535050, *3 (M.D. Fla. 2006). "Municipal liability arises only if the municipality maintains an unconstitutional policy or custom." Ainsworth v. City of Tampa, 2010 WL 2220247, *7 (M.D. Fla. 2010) (citing Monell, 436 U.S. at 690-91). A "failure to train" qualifies as a municipal policy if "the need for more or different training [is] so obvious, and the inadequacy so likely to result in the violation of constitutional rights" that the failure to train amounts to deliberate indifference to a constitutional right. City of Canton, 489 U.S. at 390; Belcher v. City of Foley, 30 F.3d 1390, 1397 (11th Cir.1994) ("Only when the failure to train amounts to 'deliberate indifference' can it properly be

characterized as the 'policy' or 'custom' that is necessary for [S]ection 1983 liability to attach.").

"No basis exists for an inadequate training claim if the plaintiff alleges only a single incident to support the claim." Ainsworth v. City of Tampa, 2010 WL 2220247 at *7 (citing City of Oklahoma v. Tuttle, 471 U.S. 808, 821-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.")); c.f. Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986) (finding that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."). A municipality becomes liable "by actively endorsing or approving of the conduct of its employees or officials." Garvie v. City of Ft. Walton Beach, 366 F.3d 1186, 1189-90 (11th Cir. 2004). However, "to state a successful [Section] 1983 claim against a municipality based on a ratification theory . . . 'the[] [plaintiff] must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis . . . .'" 366 F.3d at 1189.

The same standard applies to a school board, which is susceptible to a claim under Section 1983 for conduct the school board officially sanctions or orders. K.M. v. Sch. Bd. of Lee County, 150 F. App'x. 953, 957 (11th Cir. 2005). An official act—such as a policy, regulation, or custom—renders a school board liable if the official act causes the constitutional violation. Monell, 436 U.S. at 691. To state a claim that a custom or

- 5 -

practice caused the plaintiff's injury, the plaintiff must plead facts demonstrating that the act is not an isolated incident. See Church v. City of Huntsville, 30 F.3d 1332, 1345-46 (11th Cir. 1994).  The alleged practice must be persistent and widespread.  K.M., 150 F. App'x. at 957.[2]

Nevertheless, a school board typically possesses no constitutional duty to protect a student from self-inflicted harm that occurs outside of school.  Wyke v. Polk County Sch. Bd., 129 F.3d 560, 565 (11th Cir. 1997); DeShaney v. Winnebago County Dept. of Soc. Services, 489 U.S. 189 (1989) (finding that the due process clause imposes no duty on the state "to protect the life, liberty, and property of its citizens against invasion by private actors. The [c]lause is phrased as a limitation on the [s]tate's power to act, not as a guarantee of certain minimal levels of safety and security."). DeShaney explains that a constitutional duty to protect most often "involve[s] a custodial relationship between the injured individual and the state."[3]  The state creates a "custodial relationship" through "incarceration, institutionalization, or other similar restraints of personal liberty."  Wyke, 129 F.3d at 569 (quoting DeShaney, 489 U.S. at 205); White v. Lemacks, 183 F.3d 1253, 1257 (11th Cir. 1999) (finding that a "custodial relationship" emanates from "incarceration of prisoners or other forms of involuntary confinement through which the government deprives individuals of their liberty and thus of their ability

---

[2] For example, in K.M., the parents of a student with attention deficit disorder alleged that the school board customarily delayed production of student records for children with disabilities.  The parents identified two other instances in which the school board delayed release of the records.  K.M. holds that three factually distinct instances over four years fail to constitute a custom.

[3] In DeShaney, a child suffered harm while outside of the state's custody and while in the custody of the child's father.  Because the father "was in no sense a state actor," the state bore no responsibility for the harm suffered by the child.  489 U.S. at 201.

- 6 -

to take care of themselves."). Compulsory school attendance (without more) establishes no "custodial relationship" and triggers no duty to protect. Wyke, 129 F.3d at 569. "By mandating school attendance, the state simply does not restrict a student's liberty in the same sense that it does when it incarcerates prisoners or when it commits mental patients involuntarily." 129 F.3d at 569.

Even if the plaintiff establishes a custodial relation, the plaintiff must plead (1) that the school board acted with a degree of culpability and (2) that the school board's action directly caused the deprivation of a constitutional right. Worthington v. Elmore County Bd. of Educ., 160 F. App'x. 877, 880 (11th Cir. 2005). To demonstrate culpability, the plaintiff must allege facts showing that the school board acted with deliberate indifference to known or obvious consequences. 160 F. App'x. at 880-81. The facts must show that the school board acted with more than "simple or even heightened negligence." Bd. of County Com'rs v. Brown, 520 U.S. 397, 407 (1997). If a school program, policy, or custom fails over time to prevent constitutional violations, the school board "may eventually [receive] notice that a new program is called for." 520 U.S. at 407. An allegation that the school board followed a program that the school board knew or should have known would not prevent constitutional violations is sufficient. 520 U.S. at 407. A pattern of constitutional violations is not necessary if a violation is both likely and highly predictable. 520 U.S. at 409. To demonstrate causation, the plaintiff must plead facts showing that the school board's "deliberate conduct was the moving force behind the injury alleged." Worthington, 160 F. App'x. at 880.

- 7 -

If no "custodial relationship" exists, a school board assumes a duty to protect by creating a dangerous situation or rendering the student more vulnerable to harm. Wyke, 129 F.3d at 567.  In Wyke, a student attempted suicide at school in the boys' restroom. A classmate intervened and persuaded the student to return to class.  The classmate described the incident to his mother, who informed the dean of students. The dean assured the classmate's mother that he "would take care of it."  Shortly thereafter, the dean sequestered the student in the dean's office—despite the student's appearing "very upset"—and read Bible verses to him.  The dean notified the student's parents neither of the suicide attempt nor of the meeting and failed to otherwise act.  The student again attempted suicide at school and later committed suicide at home.  Wyke holds (1) that the dean's sequestering the student created no danger to the student and (2) that the dean's assurance that he would "take care of it" imposed neither on the classmate's mother nor on the student a limitation that rendered the student more vulnerable to harm.

In this action, the plaintiffs allege a custom under Monell by claiming that the School Board operated under "inadequate guidelines on suicide prevention, a lack of training, a lack of supervision, [and] a lack of controls to assure accountability" and that school personnel assigned H.S.W. to an unfamiliar social worker.  Additionally, the plaintiffs argue that the School Board "had the opportunity to review the resulting acts and omissions, failed to undertake any remedial measure, and effectively ratified [the conduct] as being in accord[] with [the School Board's] policy and customs."  However, the School Board shows the maintenance of a written policy on suicide prevention.  The

policy, which is central to the complaint and which the School Board attaches to the motion to dismiss, requires notice to a student's parents if the student presents a risk of suicide. Thus, in this instance, the social worker deviated from the School Board's written policy. The plaintiffs allege a "failure to train" but fail to allege facts supporting a deliberate indifference to either an obvious need "for more or different training" or an inadequacy "so likely to result in the violation of constitutional rights". The plaintiffs allege no fact showing that the School Board actively endorsed or approved the social worker's decision not to inform the plaintiffs of H.S.W.'s suicide risk. Rather, the plaintiffs allege an admittedly tragic but isolated incident in which a social worker failed to follow established protocol. Furthermore, even if the plaintiffs alleged facts sufficient to assert municipal liability under Monell and even if the allegations supported a "custodial relationship" between the school and H.S.W., the plaintiffs provide no factual support for the alleged claim of deliberate indifference, i.e., that the School Board's conduct amounted to more than either "simple or heightened negligence". Brown, 520 U.S. at 407. Absent a custodial relationship, no factual allegations support the claim that the School Board (through the conduct of the social worker) rendered H.S.W. more vulnerable to harm.

Conclusion

Accordingly, the School Board's motion (Doc. 8) to dismiss counts one and two is **GRANTED**, and counts one and two are **DISMISSED**. The plaintiffs may file an amended complaint no later than **July 1, 2011**.

ORDERED in Tampa, Florida, on June 20, 2011.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE